## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

           Plaintiff,

   vs.

MICHAEL L. BEARDEN.,

           Defendant.

No. 11-CR-0891-MV-001

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Michael Bearden's Objections to Proposed Modifications of Conditions of Release [Doc. 88].  The United States timely responded and Defendant filed a Sealed Supplement to Defendant's Objections to Proposed Modifications of Conditions of Release.  *See generally* Docs. 90, 91.  The Court held an evidentiary hearing on the Objections on Thursday, October 1, 2015 in Santa Fe.  *See generally* Docs. 92, 93.  The Court, having considered the Objections, briefs, testimony, relevant law, and being otherwise fully-informed, finds that the Objections are well-taken in part and therefore will be **GRANTED IN PART.**

### BACKGROUND

On April 13, 2011, Defendant was charged in this Court with burglary for events that occurred on or about April 15, 2008.  Doc. 88 at 1.  Approximately five months later, on September 26, 2011, Defendant was convicted pursuant to a plea

agreement.  *Id.*  On March 28, 2012, Judge Black sentenced Defendant to thirty-six

(36) months imprisonment followed by one (1) year of supervised release.  *See* Doc.

52.  Defendant was released from the custody of the Federal Bureau of Prisons on

July 14, 2015, at which point he began his year term of supervised release, which is

set to expire on July 13, 2016.  Hearing Transcript[1] ("Tr.") at 8.  Prior to

Defendant's release, however, Relevancy, Inc. prepared a "Sex Offense-Specific

Evaluation" because of "three documented incidents of deviant sexual behavior" in

Defendant's past.  Doc. 80 at 2.

First, in August 1997, Defendant's younger brother and nephew, both

approximately eight years old, reported that Defendant "penetrated their anal

cavities with his finger and he would pull it out quickly, causing them pain."  *Id.*

Second, in October 1997, Defendant was convicted of Kidnapping and Aggravated

assault for conduct that included "penetrating the anal cavity of a boy with a

deodorant bottle at the New Mexico Boys School in Springer, New Mexico."  *Id.*  As

a consequence of Defendant's plea agreement, the charges for "Criminal Sexual

Penetration" were dismissed, but the conduct underlying the conviction was,

undoubtedly, sexual in nature.  *Id.*  Third and finally, in March 2001, while still

"under probation for the aforementioned case," Defendant violated the terms of his

---

[1]      Citations to the Hearing Transcript refer to a rough draft of the transcript
from the October 1 hearing prepared for the Court by its court reporter.  Quotations
and citations, therefore, should not be understood to be precise, verbatim accounts,
but rather sufficiently close approximations that suffice for the purposes of this
Memorandum Opinion and Order.

release "by having contact with a 15 year old girl;" the girl was found "naked from the waist down hidden in the mother's closet during a home visit." *Id.*

The Evaluation notes that Defendant's "prognosis [is] poor" in part because he is "in denial" about sexual misconduct. *Id.* As evidence, the evaluating therapist, Dr. Sykes, noted that Defendant "employed minimization techniques while discussing the deviant behavior." *Id.* The Evaluation recommends that Defendant "participate in sex offender mental health treatment." *Id.* Further, Defendant's risk of repeating these behaviors is "high," particularly when triggered by "drugs, alcohol, and uncontrolled anxiety." *Id.* As a result of this evaluation, Probation now seeks to modify Defendant's conditions of release to add six new conditions of release. They are:

1. As directed by the probation officer, the Defendant shall notify third parties of risks that may be occasioned by the Defendant's criminal record or personal history and shall permit the probation officer to make such notification and confirm the Defendant's compliance with such notification requirements.

2. The Defendant must participate in sex offender treatment and submit to risk assessment testing, clinical polygraph testing, and other specific sex offender tests, as directed by the probation officer. The Defendant may be required to pay a portion of the cost of treatment as determined by the Probation Office.

3. The Defendant must submit to search of person, property, vehicles, business, computers and residence to be conducted in a reasonable manner and at a reasonable time, for the purpose of detecting sexually explicit material at the direction of the probation officer. He must inform any residents that the premises may be subject to a search.

4. The Defendant must not have contact with children under the age of eighteen without prior written permission of the probation officer. He must immediately report unauthorized contact with children to the probation officer.

5. The Defendant must not volunteer for any activities in which he supervises children or adults with mental or physical disabilities.

6. The Defendant must refrain from the use and possession of alcohol and other forms of intoxicants.

Defendant filed objections to each of these additional conditions, with the exception of the sixth and final condition prohibiting the possession or consumption of alcohol and other intoxicants.  Doc, 88 at 3.  See also Doc. 90 at 2.

At the hearing held on this matter, the Court heard the testimony of Probation Officer Kenneth Evans and Dr. Moss Aubrey, who was qualified as an expert in forensic psychology generally and specifically in the assessment of sexual offenders.  Tr. at 5-6, 34.  Probation Officer Evans explained that, irrespective of the conditions that this Court elects to impose, Defendant will be required to register as a sex offender with the state of New Mexico because he was convicted of an attempted kidnaping charge that involved "criminal sexual penetration."  *Id.* at 8-9.

Probation Officer Evans continued that Relevancy Inc., in its discharge summary, written after fourteen total sessions with the Defendant, indicated that Defendant's "prognosis was determined to be poor" and recommended that he "participate in mental health treatment."  *Id.* at 10-11.  Specifically, the proposed treatment would demand that Defendant "be closely observed for assaultive conduct and contact with female minors."  *Id.* at 12.  Probation Officer Evans elaborated that the recommended course of action was termed "mental health treatment" because of a concern that Defendant "would argue the validity of sex offender-specific" therapy.  *Id.*

4

Dr. Aubrey, in his testimony, explained that he based his opinions on a review of the evaluation performed by Dr. Sykes, the Presentence Report prepared by Probation, and on two meetings between him and the Defendant. *Id.* at 34. One test he performed, which purports to estimate sexual interest in a series of photographs by measuring the viewing time of those photos, indicated that Defendant's "sexual interest is considered normal for an adult heterosexual male. That is, he's interested in adult females and adolescent girls." *Id.* at 39. Dr. Aubrey clarified that the interest in adolescent girls is considered "clinically [statistically] normal" insofar as it is not anomalous, but may still be "criminal or morally objectionable." *Id.* at 39-40. Stated differently, according to Dr. Aubrey, a significant number of "non-offending, well-adjusted adult males also show interest in adolescent girls." *Id.* at 40. This statistical result, however, indicates nothing about the ability of either Defendant or the average adult male to suppress this sexual interest and act in accordance with the law.

Dr. Aubrey continued that his analysis estimated that Defendant's "risk of [committing a future] sexual offense" is 16%, which he describes both as "relatively low," yet slightly above the average of "about 15%" for all sex offenders. *Id.* at 42-43. *See also id.* at 47 (explaining that Defendant's predictive risk "was right in the average range, 16% or 15% for the population of sex offenders in general."). Dr. Aubrey added that some other factors in this evaluation might indicate that Defendant's risk of recidivating is "probably lower than that." *Id.* at 43. *See also id.* at 46 ("there's a good argument to consider the 16% to maybe be an overestimate or

the ceiling of a range of estimated risk.").  Even so, Dr. Aubrey generally concurred in Dr. Sykes's earlier evaluation and stated that, in his opinion the risk for another sexual offense was "relatively low" and estimated it to be "between 6% and 16% over the next, perhaps, five years."  *Id.* at 47.  However, Dr. Aubrey also underscored the limitations of this evaluation, noting that Defendant's "risk of committing any type of offense" is "much greater than" the 6% to 16% range he quoted.  *Id.*  Finally, it is important to note that this analysis did not consider the first incident discussed above, in which Defendant digitally-penetrated two very young male members of his family, though Dr. Aubrey insists that it would not have altered his scoring of Defendant's evaluations.  *Id.* at 70.

Ultimately, Dr. Aubrey did not recommend sex offender treatment in this case, because "treating someone who denies having committed a sexual offense" and "doesn't have a conviction of sexual offense" frequently "gets derailed, as it were, by reviewing that situation over and over."  *Id.* at 47-48.  That is, Dr. Aubrey expressed concern that "there's a real chance that [Defendant] would spend a lot of time debating that he didn't need to be in that kind of therapy because he didn't commit a sexual offense."  *Id.* at 48.  Given this potential resistance, Dr. Aubrey reasoned that it would be more beneficial to treat Defendant by "focusing on his more recent criminal behavior and how to help him detach from that and desist."  *Id.* at 49.  Dr. Aubrey indicated that such treatment be more effective because Defendant's "big issue is nonchalance about obeying the law, impulsivity, opportunistic.  I mean, those are all concerns.  And so that's really the concern, that he might act on this

normal sexual interest with teenagers." *Id.* at 67.  To this, Dr. Aubrey added that it would be prudent for "any kind of chronic offender to not be around minors of either gender, because they could exert a negative influence, even if there isn't a particularly high risk of sex offense." *Id.* at 57.

## DISCUSSION

### I.   Supervised Release

It is undisputed that 18 U.S.C. § 3583 provides that a court "may order, as a further condition of supervised release … any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate," provided that such a condition:

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and,
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d).  Further, even Defendant acknowledges that the Court has "broad discretion to prescribe special conditions of release." *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011).  Of course, "this discretion is not without limits." *Id.*  As described by the Tenth Circuit, any condition of release "must (1) be 'reasonably related' to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, *or* the defendant's educational,

vocational, medical, or other correctional needs" it must also "(2) involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation" and "(3) be consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Martinez-Torres*, 795 F.3d 1233, 1236 (10th Cir. 2015) (emphasis added). "A condition need not be reasonably related to all the listed § 3553(a) factors, as long as it is reasonably related to one or more of the factors." *United States v. Begay*, 631 F.3d 1168, 1174 (10th Cir. 2011). Moreover, a "sentencing court need not provide reasons for each specific special condition that it imposes; rather, it must only provide a generalized statement of its reasoning." *Mike*, 632 F.3d at 693.

Importantly for the case at bar, "courts have rejected the argument that sex offender conditions are limited to cases where the underlying offense is a sex offense." *United States v. Hahn*, 551 F.3d 977, 983 (10th Cir. 2008) (citing *United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004)). *Cf. United States v. Barajas*, 331 F.3d 1141, 1143 (10th Cir. 2003) (defendant convicted for firearms offense; circuit upheld special conditions requiring counseling and child support payments). Instead, such conditions, if imposed, must be justified according to the same factors discussed above. The Court will address each of Defendant's objections in turn.

## II.   Proposed Condition One:  Third-Party Notification

Defendant argues that the first proposed condition, that "[a]s directed by the probation officer, the Defendant shall notify third parties of risks that may be

occasioned by the Defendant's criminal record or personal history" is not

"reasonably related" to offense, his history and personal characteristics, or any of

the other statutory factors. *See* Doc. 88 at 4-5. He continues that the proposed

condition: (1) pertains to incidents too far in the past, (2) is unconstitutionally

vague, and (3) "involves a far greater deprivation of liberty" than is warranted by

the circumstances of the case. *Id.* at 4-6.

      The Court joins only in the second of these concerns. First, Defendant offers

no authority for his assertion that there is "[n]o reasonable relationship to one of

the statutory factors" because the most recent of "the offenses giving rise to his 'sex

offender' status" occurred fourteen years ago. *Id.* at 5. The Court finds this line of

reasoning to be suspect insofar as Defendant has spent at least nine of the fourteen

years since his most recent confirmed sex offense in custody. Consequently, the

Court must view the Defendant's purported "temporal gap" with significant scrutiny

because it overstates the period in which Defendant has been able to re-offend.

      Moreover, while there are out-of-circuit cases that employ the "temporal gap"

analysis to which Defendant refers, Defendant stretches that concept beyond the

relatively limited holding of those cases. In *United States v. Scott*, for example, the

Eighth Circuit reversed a sex offender special condition where the sexual offense

occurred fifteen years prior to the current, entirely unrelated robbery conviction.

*United States v. Scott*, 270 F.3d 632, 633 (8th Cir. 2001). However, in doing so, the

panel relied on the fact that "the conditions are not reasonably related to the

current offense for which Scott was sentenced, armed bank robbery," which is flatly

opposed to the Tenth Circuit's "related to any of the factors" jurisprudence and therefore totally inapposite here. *Id.* at 636. Further, the Eighth Circuit reasoned that "there is no evidence supporting the need for the special conditions in Scott's case" because the "government presented no evidence that Scott has a propensity to commit any future sexual offenses." *Id.* Here, by contrast, a *recent* psychological evaluation makes plain that there is a *present* risk of Defendant engaging in *future* criminal sexual behavior. Even assuming for the purposes of discussion that there is only a one-in-ten chance that Defendant will commit a sexual offense in the next five years, the Court finds such a risk unacceptably high and more than sufficient to justify a mere nine month period of third-party notification.

In short, the "temporal gap" cases are both irrelevant insofar as they rely on a different rule of law than the Tenth Circuit *and* rest on distinguishable facts. Here, the Court confronts a Defendant with three separate instances of sexual misconduct in his past, difficulty with impulse control and obeying the law, and recent evaluations that estimate his probability of committing another sexual offense in the next five years to be approximately 6% – 16%. On these facts, the Court finds that a notification provision is "reasonably related" to Defendant's personal history and characteristics.

Second, Defendant's argument that the proposed condition is "unconstitutionally vague" resonates most strongly with the Court. Defendant contends that because "it does not provide a reasonable guide for Mr. Bearden to identify those individuals that fall within the purview of the prohibition" the

condition could be read to demand that he notify every individual that he encounters, including "the barista from whom he buys coffee."  Doc. 88 at 5-6.  In effect, Defendant continues, such a provision "leaves the probation officer with unlimited discretion to patrol the frontier of those individual who fall within the list of qualifying third parties and those who fall outside of this list" and therefore "fails to provide adequate notice to Mr. Bearden of those to whom he must notify of his status."  *Id.* at 6.  This argument is weak for several reasons.  As an initial matter, the text of the condition makes clear that Defendant need only notify third-parties of "[a]s directed by" his probation officer, eliminating any potential notice issues; plainly, the proposed condition contemplates that Defendant will be instructed as to the set of people that he must inform of his status prior to demanding that he comply with that requirement.

Moreover, as the Tenth Circuit has recently reiterated, the sentencing "court may delegate limited authority to a probation officer as long as the court retains and exercises ultimate authority over all of the supervised release conditions." *United States v. Wayne,* 591 F.3d 1326, 1336 (10th Cir. 2010).  "To decide whether a condition of supervised release improperly delegates sentencing authority to a probation officer, we distinguish between [permissible] delegations that merely task the probation officer with performing ministerial acts or support services related to the punishment imposed and [impermissible] delegations that allow the officer to decide the nature or extent of the defendant's punishment."  *United States v. White*, 782 F.3d 1118, 1141 (10th Cir. 2015).  The facts here differ strongly from those at

issue the Voelker case discussed by the Tenth Circuit; there, the defendant was subject to a lifetime of supervised release and the probation officer had "no guidance" in exercising its discretion regarding whether the defendant would ever be allowed to see any children for the rest of his life, including, importantly, his own children.  *Id.* at 1141-42.  Here, Defendant will only be on supervised release for one year, such that he does not face such an enormous deprivation of liberty and, as discussed below, the Court will offer guidance to the Probation Officer as to the manner in which the conditions should be enforced.

Third, it does not appear that Defendant's "greater deprivation of liberty" argument articulates any basis for objection not discussed above.  Defendant notes that he has "lived for over 14 years since his last alleged sex offense" and, during that time, "he was married three times, held several jobs, and committed no new sexually-related offenses" such that "[n]otification to third parties of a perceived risk bears little relationship to the circumstances" of his life and "constitutes a significant deprivation of liberty unrelated to the purpose of deterring criminal activity."  Doc. 88 at 6.  As an initial matter, the Court explained above why Defendant's reference to fourteen years without a new incident is profoundly misleading.  Moreover, it is entirely unclear to the Court why Defendant's three marriages or employment status bear at all on the determination at hand; to the contrary, the fact that Defendant has been unable to maintain a stable relationship raises some degree of suspicion in the case of someone with Defendant's personal

characteristics.  Further, in this Court's experience, a significant number of sex offenders are married and employed.

Even so, the broad phrasing of this proposed condition does give the Court pause.  Consequently, the Court will modify the language slightly to ensure clarity for Defendant and Probation and to tailor the condition in a manner that guarantees that Defendant's liberty is not deprived more than necessary, while still ensuring that the public is protected.  As ordered, the text of the condition will read:

> **The Probation Officer shall direct the Defendant to notify certain specifically-identified third parties of his sex offender status.  In so directing the Defendant, the Probation Officer shall consider the relationship of the Defendant to the person to be notified, the frequency of their interactions, the context of their interactions, and what risks may by posed by their interactions.**

## III.    Proposed Condition Two:  Sex Offender Treatment

Defendant's objections to the second proposed condition exhibit similar flaws.  Succinctly stated, Defendant argues that there are three problems with the requirement that he submit to sex offender treatment and "submit to risk assessment testing, clinical polygraph testing, and other specific sex offender tests, as directed by the probation officer."  Doc. 88 at 7.  They are:  (1) the requirement is not reasonably related to the offense, his personal characteristics, or the protection of the public, in large part because these offenses occurred at least fourteen years ago; (2) polygraph testing in particular is "far too unreliable" to be "reasonably related" to one of the statutory requirements, and (3) polygraph testing on supervised release violates Defendant's Fifth Amendment privilege against self-incrimination.  *Id.* at 7-12.

Defendant's first basis for objection fails for the reasons articulated in the discussion of the first proposed condition.  At very least, the recent evaluation performed by Relevancy, Inc. and the testimony of Dr. Aubrey demonstrate that Defendant poses a present and continued risk, such that Defendant's "history and characteristics" and the "protection of the public" justify demanding that he receive treatment.  *See Hahn*, 551 F.3d at 984 ("[w]hile the sex offender conditions imposed on Mr. Hahn do not relate to the nature and circumstances of his offense, they do relate to his history and characteristics…").  Moreover, the Court notes that if Defendant's instant term of supervised release were predicated on a sex offense, the United States Sentencing Guidelines would recommend that the Court impose a "condition requiring the defendant to participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders." U.S.S.G. § 5D1.3(d)(7)(A).  While Defendant is not before the Court on a sex offense, the guidance of the United States Sentencing Commission indicates in its policy statement that the listed special conditions "may otherwise be appropriate in in particular cases," such that the Court is comfortable drawing on the guidance of the Commission.  *Id.* at § 5D1.3(d).  As described above, the Court believes that Defendant's history and characteristics warrant the imposition of this special condition, which the Court believes is necessary for Defendant's rehabilitation and the protection of the public.

While Dr. Aubrey and Dr. Sykes recommended generic "mental health" treatment rather than sex offender-specific therapy, the Court finds their reasoning

14

wholly unpersuasive.  At the hearing, Dr. Aubrey maintained, in effect, that because Defendant would resist classification as a sex offender, he should not be treated as one.  Tr. at 47-49.  The Court takes issue with this logic.  Irrespective of Defendant's preferences, he is required to register as a sex offender in New Mexico; this is a fact that he cannot avoid.  *Id*. at 8-9.  Moreover, given Defendant's undisputed history of minimizing and denying his sexual misconduct, the Court believes that sex offender-specific treatment will be *yet more* important in this case, in part to insist that Defendant address honestly these issues going forward and to uncover the source of Defendant's denial, which *itself* is an issue to be addressed in a clinical setting.

The Court's position finds ample support in academic and professional literature, which indicates both that denial is common among sex offenders prior to therapy and that although denial is often perceived as an obstacle to effective treatment, the underlying psychological issues that manifest as denial and resistance may actually be important targets for treatment.  For example, the 2004 *Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers* states that the professional organization is "aware that a majority of clients present with varying degrees of denial related to sexually abusive behavior" and that "presenting with some degree of denial does not preclude potential clients from entering treatment."  ATSA PROFESSIONAL ISSUES COMMITTEE, ASSOCIATION FOR THE TREATMENT OF SEXUAL ABUSERS, PRACTICE STANDARDS AND GUIDELINES FOR MEMBERS OF THE ASSOCIATION FOR THE TREATMENT

OF SEXUAL ABUSERS, § 28 (2005). *See also* Nicholas Blagden, *et. al.*, *Making Sense of Denial in Sexual Offenders: A Qualitative Phenomenological and Repertory Grid Analysis*, 29 JOURNAL OF INTERPERSONAL VIOLENCE, 1698-1731 (2014) at 1699 ("The majority of sexual offenders deny some aspect of their offending when first entering prison" which "has implications for the criminal justice system and wider society.").

Recent scholarship has served to complicate the naïve view of sex offender denial, explaining that while a patient's denial may appear on first examination to be a categorical factual statement, such denial often "involve[s] beliefs, opinions, or subjective interpretations" that may offer insight into the patient's worldview. Sandra L. Schneider & Robert C. Wright, *Understanding Denial in Sexual Offenders, A Review of Cognitive and Motivational Processes to Avoid Responsibility*, TRAUMA, VIOLENCE, & ABUSE, Jan. 2004, at 14. That is, an offender's denial may inherently include a variety of definitional differences or "cognitive distortions" that may have clinical importance, if properly drawn out. *Id.* at 14-15. Stated differently, "[s]exual offender denial is [] complicated by the fact that being honest about one's culpability is not necessarily a straightforward matter" because "significant evidence exists that the deviant actions of offenders are embedded in an elaborate network of distorted ideas, grounded in evidence accrued through biased processes." *Id.* at 16. Viewed in this manner, Defendant's denial is best understood as an avenue for clinical investigation, rather than an obstacle to treatment. *See* Blagden at 1725 ("Instead of viewing denier's accounts as false we should construe their accounts as a form of meaning making. In this denial becomes an interaction,

16

something to do understood and worked with rather than something that is in need of challenge."). Therefore, the Court finds that sex offender treatment, rather than general mental health treatment, is appropriate in the instant case.

Defendant's objections to polygraph testing, while persuasively argued, are legally without merit. The Tenth Circuit has upheld the imposition of polygraph conditions, even though it is "skeptical" of the polygraph's "usefulness as a supervision tool." *Begay*, 631 F.3d at 1173-74 (also noting that "several other circuits have upheld the imposition of polygraph testing as a special condition of supervised release."). Moreover, Defendant's own expert, Dr. Aubrey, testified that polygraphs are "widely used" in treating sex offenders and that they have has been "very beneficial." Tr. at 74. The Court's own experience confirms Dr. Aubrey's statements; polygraphs have been used as component of sex offender treatment with several of its defendants, and, frequently, the use of the device helps encourage candor and complete disclosure during sessions, which, in turn, facilitates more effective treatment.

Similarly, any Fifth Amendment challenge is premature. Defendant has not been asked to incriminate himself and, if he were, he would, of course, be able to challenge the introduction of any such statements against him. *See, e.g.*, *Mike*, 632 F.3d at 697-98 ("defendant here has yet to make any incriminating statements. Because no incriminating statements have been made, the Fifth Amendment is not implicated."). Thus, the Court finds that this condition is "reasonably related" to Defendant's history, personal characteristics, correctional needs, and the deterrence

17

of future criminal conduct, while involving no greater deprivation of liberty than is necessary to promote the defendant's rehabilitation.

## IV.    Proposed Condition Three:  Computer Search

At the hearing held on this matter, Defendant withdrew his Third Objection, in which he had argued against the imposition of the computer search condition. *See* Tr. at 85 ("we'll withdraw our objection to – that requires the search of his computer.  It's something that I objected to, but we'll withdraw for right now."). Consequently, the Court will discuss this proposed condition more briefly.

As filed, the objection to this proposed condition was that a search of Defendant's computer "at the discretion of the probation officer is flawed because it is not reasonably related to a specific purpose of sentencing and involves a far greater deprivation of liberty than is reasonably necessary." Doc. 88 at 13.  For reasons outlined above, this argument must fail.  The Court is compelled to begin this analysis by repeating that this condition, as with all the others at issue here, is set to expire on July 13, 2016, a mere nine months from now; while the search of Defendant's computer is certainly an intrusion into his liberty, it is, comparatively, a minor one, both in scope and in duration.  Moreover, as noted in passing by the Tenth Circuit in *Martinez-Torres*, if Defendant's instant offense had been a sex offense, the United States Sentencing Guidelines would suggest that Defendant "be subject to limits on computer use if the defendant used one in the commission of the offense, and submit to searches of any property by law-enforcement or probation officers." *Martinez-Torres*, 795 F.3d at 1237.  Although Defendant is currently not

18

serving a sentence for a sex offense, the recommendation of a similar special condition of release by the United States Sentencing Commission reinforce the Court's finding that such a condition is appropriate where, as here, a defendant's personal history and characteristics demonstrate a present risk committing additional sexual offenses.

In this case, the testimony demonstrates that Defendant has poor impulse control and difficulty conforming his behavior to the law, in addition to an "average" risk of re-offending, when compared to other sex offenders. These facts, particularly Defendant's issues with impulse control, justify the Court in ensuring that his online activities do not lead to conduct that would violate the other conditions or the law. In this way, Defendant's browsing history, hard drive contents, and other information gleaned from his computer are intimately related to protecting the public and ensuring the efficacy of his rehabilitation. *See, e.g.*, *Mike*, 632 F.3d at 694 (noting that, in light of the "prevalence of content on the internet that appeals to individuals prone to committing sexual offenses, we cannot say that the court abused its discretion in finding that the monitoring of Mike's computer usage was reasonably related to the goals of protecting the public from further crimes committed by Mike and providing Mike with the correctional treatment he needs.").

## V.   Proposed Condition Four:  No Contact with Minors

Defendant argues that the proposed condition that he "must not have contact with children under the age of eighteen without prior written permission of the probation officer" and "report unauthorized contact with children to the probation

19

officer" is overbroad.  Doc. 88 at 13-14.  Defendant argues that because he cannot be certain who in his daily interactions might be under the age of eighteen, including, for example, a clerk at a grocery store or co-parishioner at church, he would, in effect, be confined to "a life as a hermit" for the duration of his supervised release. *Id.* This objection retraces much of the same territory discussed with respect to the proposed condition that he notify third parties of his criminal record.

Thus, although the Tenth Circuit upheld an identical condition of supervised released in *United States v. Smith*, 606 F.3d 1270 (10th Cir. 2010), this Court finds that it is uncomfortable with the breadth of the proposed text, insofar as it prohibits all contact with minors absent "written permission" and offers no guidance from the Court as to the manner in which the Probation Officer should exercise his discretion.  Further, the Court is made apprehensive by the prospect, however unlikely, of the government pursuing legal action against Defendant for unintentional or unknowing violations of this proposed condition.  However, based on the Court's experience, it is important for defendants to be vigilant about their interactions with minors and to report any contact, however transitory, to their probation officer, if only for the purpose of continuing the dialogue that undergirds all effective treatment.  Consequently, the Court will modify the proposed condition and will employ the following language instead:

> **The Defendant is prohibited from having unapproved contact with children under the age of eighteen without the prior written permission of the probation officer.  The Probation Officer shall consider, in approving contact with particular children:  the context in which the Defendant will interact with the child, the relationship between the Defendant and the child, the presence of supervising**

**adults, and any other factors relevant to assessing the risk posed to the child by the Defendant.  Incidental, unforeseeable, or unknowing contact with children under the age of eighteen shall not be considered a violation of this condition.  The Defendant must immediately report all unauthorized contact with children of which he is aware to the probation officer.**

Read in its entirety, the Court believes that this condition is reasonably related to Defendant's past misconduct with children and present risk of reoffending, while not infringing on Defendant's liberty interest more than is necessary to protect the public and ensure that he engages actively with his treatment.

## VI.     Proposed Condition Five:  No Volunteering for Certain Organizations

Defendant merely repeats here the same refrain he offered above, namely that any sexual offense occurred in the distant past and that "nothing in Mr. Bearden's past involves an offense involving individuals with mental illness."  Doc. 88 at 14-15.  While it is true that none of Defendant's offenses appears to involve individuals suffering from a mental illness, the government aptly notes that Defendant "ignores the fact that mentally ill children and adults are among the most vulnerable individuals in our society" and that given Defendant's history of poor impulse control and judgment, he should not be permitted to supervise vulnerable people.

The Tenth Circuit endorsed such reasoning in *United States v. Smith*.  There, it explained that the "district court did not abuse its discretion by imposing special conditions of supervised release limiting Smith's ability to have contact with children and disabled adults" because it considered the defendant's rape of a

heavily-intoxicated, unconscious woman to be an attack on a vulnerable individual. *Smith*, 606 F.3d at 1283. So it is here. Defendant's victims were all minors, some of whom were very young members of his own family, such that the reasoning of *Smith* applies with equal force. Moreover, this limitation is not a particularly heavy burden on Defendant's liberty, as it merely represents a nine month restriction on certain types of volunteer work. Indeed, the Defendant has not even indicated any past association with a volunteer organization that would be interrupted by this proposed condition, such that any interference with Defendant's liberty is, at this point, both entirely hypothetical and qualitatively moderate.

## CONCLUSION

For the foregoing reasons, the Court will modify Defendant's conditions of supervised release to include the six conditions proposed by Probation, as modified by the discussion above. These conditions will be entered by a separate, concurrent order.

**IT IS THEREFORE ORDERED** Defendant's Objections to Proposed Modifications of Conditions of Release [Doc. 88] are **GRANTED IN PART.**

Dated this 6th day of October, 2015.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE